UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
RIICO HOWELL,                                      Civil Action No:

Plaintiff                                          JURY TRIAL DEMANDED

      - against-

SLUTTY VEGAN, INC.,

Defendant

---------------------------------------------------------------------X

## COMPLAINT

Plaintiff Riico Howell ("Mr. Howell"), by his attorneys Brooklyn Legal Services, brings this Complaint ("the Complaint") against Defendant Slutty Vegan, Inc. ("Defendant") to remedy violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York City Human Rights Law, New York City Admin. Code §§ 8-107(1) and (7) ("NYCHRL") for sexual harassment and gender discrimination, including a hostile work environment and retaliation.

## PRELIMINARY STATEMENT

1. Mr. Howell brings this Complaint to remedy illegal conduct under Title VII and the NYCHRL, including sexual harassment, gender discrimination, imposition of a hostile work environment and retaliation by Defendant, his former employer.

2. Defendant employed Mr. Howell from March 8, 2024 to April 19, 2024. The company caused Mr. Howell extreme harm in that time by failing to remediate its employee's sexual harassment and assault of Mr. Howell, and its employees' discrimination of Mr. Howell on the basis of his gender. Instead, Defendant fired Mr. Howell in retaliation for his complaints of sexual

harassment and discrimination. Defendant, by its actions and inaction, exacerbated Mr. Howell's disabilities, including depression, anxiety, post-traumatic stress disorder (PTSD), and gender dysphoria.

3. From the moment Mr. Howell began working for Defendant, another employee, whom Mr. Howell knew only as "Humphrey," sexually harassed and assaulted him. Humphrey touched Mr. Howell's butt on their first day at Defendant's newly-opened restaurant site on Bleeker Street, where Mr. Howell continued to work until his retaliatory termination. Humphrey continued to sexually harass and/or assault Mr. Howell every single day, including under the watch of managers and despite Mr. Howell's repeated requests to Humphrey to stop and attempts to avoid physical proximity to Humphrey. Mr. Howell estimates that during the six weeks that he worked for Defendant, Humphrey touched him sexually on his butt or in his genital area at least fifty times.

4. Mr. Howell reported Humphrey's behavior to Defendant's team leaders and managers on every single shift he worked. In response, shift managers laughed. Mr. Howell complained to Defendant's general manager and requested to be assigned to different shifts than Humphrey. The general manager took no action and continued to schedule Mr. Howell and Humphrey together.

5. Defendant's upper-level staff, including team leaders, trainers and managers, discriminated against Mr. Howell on the basis of his gender identity by misgendering him and making jokes about his gender identity and by failing to take appropriate remedial action against Humphrey, a cisgender man, for sexually harassing and assaulting Mr. Howell, a transgender man. Mr. Howell was the only transgender employee at Defendant's Bleeker Street location during his tenure there.

6. In early April, Humphrey sexually assaulted Mr. Howell a final time. Mr. Howell yelled at Humphrey to stop and to leave him alone. The on-site manager told Mr. Howell to go home. Defendant's Human Resources employee told Mr. Howell two days later that they had removed him from his shifts while they "investigated" the altercation between Humphrey and Mr. Howell. Two weeks later, a manager for Defendant informed Mr. Howell via phone that Defendant was firing Mr. Howell due to his "aggressive" behavior on his last shift.

7. Upon information and belief, Defendant took no action against Humphrey.

8. As a result of the above-described actions, Mr. Howell seeks redress for gender-based discrimination and retaliation, including sexual harassment pursuant to Title VII and the NYCHRL.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Mr. Howell's claims under Title VII pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over NYCHRL claims pursuant to 28 U.S.C. § 1367.

10. Mr. Howell filed a charge of unlawful discrimination, retaliation and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 and the NYCHRL against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 31, 2024 (EEOC Charge Number 520-2025-00756).

11. On January 2, 2025, the EEOC completed its investigation and issued a determination finding that Defendant committed employment discrimination against Mr. Howell on the basis of Mr. Howell's allegations and Defendant's failure to respond to the Complaint. A copy of the Letter of Determination and Notice of Right to Sue is attached to this Complaint as **Exhibit 1**.

12. Mr. Howell and his counsel received notification that the right to sue letter was available on the EEOC Public Portal on January 2, 2025. This complaint is timely filed within 90 days of receipt of the right to sue letter.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(l).

## PARTIES

14. Mr. Howell is a 30-year-old transgender man who resides in Queens, New York with his partner.

15. Defendant Slutty Vegan, Inc. is a domestic business corporation. Defendant owns and maintains numerous restaurants around the country. Defendant formed a limited liability company (LLC) in Georgia on November 5, 2018. *See* State of Georgia Certificate of Conversion, attached as **Exhibit 2**. Defendant converted itself from a Georgia LLC into a Delaware corporation on May 2, 2022. *Id.* Upon information and belief, Defendant currently operates seven restaurants in Georgia; one restaurant in Alabama; and one restaurant in New York. *See* Defendant's website, available at https://sluttyveganatl.com/. Defendant employs more than fifteen people.

## STATEMENT OF FACTS

1. Mr. Howell was employed at Defendant's Bleeker Street location at 280 Bleecker St, New York, NY 10014 from March 8, 2024 until Defendant terminated him on April 19, 2024. Mr. Howell participated in an online course called "Slutty University," which included a sexual harassment training, from March 8 to March 18, and began on-site work on March 22.

2. On or about March 8 or March 9, as a part of onboarding, Mr. Howell completed the necessary paperwork to begin work at Defendant's restaurant, including showing an ID and completing a W4. These documents reflected the name "Imani Howell," and Mr. Howell informed every manager that his name was Riico and that he used he/him pronouns.

3. During his tenure working for Defendant, Defendant's managers consistently recognized Mr. Howell's excellent conduct and merits as an employee. For instance, a manager at New York's flagship Harlem location named Mr. Howell "Slut of the Week." Defendant's manager at the Bleeker Street location, Priscilla Baurdette ("Ms. Baurdette"), regularly assigned Mr. Howell to high-responsibility positions in charge of quality control. Yet Defendant fired Mr. Howell after six weeks because Mr. Howell complained of the constant sexual harassment he experienced.

## HUMPHREY (L/N/U) REPEATEDLY SEXUALLY HARASSED AND ASSAULTED MR. HOWELL.

4. Mr. Howell first encountered Humphrey, last name unknown, during Defendant's "Workforce Now" training program in Brooklyn. During that program, Mr. Howell noticed that Humphrey was aggressive with other employees. Humphrey repeatedly fought about decision-making and refused to cooperate with team directives. After observing Humphrey's behavior, Mr. Howell became determined to avoid him in the workplace.

5. Humphrey first sexually harassed and assaulted Mr. Howell by touching him on his butt during Mr. Howell's first day of on-site employment. On that day, Humphrey touched

Mr. Howell's butt while squeezing by Mr. Howell in a tight space. Mr. Howell immediately told Humphrey not to touch his butt, to which Humphrey replied, "my bad, my bad."

6. The following week, Defendant conducted its grand opening of its Harlem location. Aisha Cole, Defendant's founder and president, was present. Mr. Howell recalls managers therefore reminding staff to be on their "best behavior." Humphrey and Mr. Howell were both present at the Harlem grand opening.

7. At that occasion, Humphrey again touched Mr. Howell below the waist. Thereafter, Humphrey drastically increased the frequency with which he touched Mr. Howell below the waist, including his butt and genital area, sexually touching Mr. Howell ten to fifteen times on every single shift Mr. Howell worked. Humphrey sexually touched Mr. Howell over fifty separate times in total throughout his tenure working for Defendant.

8. Although Mr. Howell repeatedly reprimanded Humphrey and attempted to avoid physical proximity to Humphrey, his efforts were largely unsuccessful given the close working quarters. Defendant's managers' failure to take remedial action against Humphrey further frustrated Mr. Howell's efforts to stop Humphrey's behavior.

**DEFENDANT DISCRIMINATED AGAINST MR. HOWELL ON THE BASIS OF HIS TRANSGENDER IDENTITY.**

9. Defendant's employees repeatedly misgendered Mr. Howell. A Team Leader named Tenji, last name unknown, misgendered Mr. Howell several times in front of a crowd of other employees. Tenji effectively "outed" Mr. Howell to his coworkers by referring to Mr. Howell as "her" in front of the Bleeker Street location's entire staff cohort. As Team Leader, Tenji shouted out orders to Defendant's employees, and referred to Mr. Howell as "she" or "her" several times when shouting orders during Mr. Howell's shifts. No

employee, including management, corrected Tenji's repeated discriminatory misgendering of Mr. Howell. In at least one instance, manager Jonathan Coleman was present when Tenji misgendered Mr. Howell, and failed to correct her despite knowing his pronouns.

10. During Mr. Howell's second week on-site at Defendant's Bleeker Street restaurant, Mr. Howell was working in the restaurant making a sandwich. A trainer at several of Defendant's other locations named Dom Wilson ("Ms. Wilson") watched Mr. Howell make the sandwich. In a loud voice to other employees, Ms. Wilson said, "Hey Riico, we know you're a man, you don't have to manhandle the sandwich." The watching employees laughed at Ms. Wilson's comment, causing him to feel humiliated, frustrated and disrespected. Upon information and belief, Ms. Wilson held a managerial role with Defendant. The incident prompted Mr. Howell to develop anxiety when preparing for work, including anxiety over his dress and appearance; and caused him to be concerned about whether he would "fit in" working for Defendant in his correct gender presentation.

### MR. HOWELL REPEATEDLY COMPLAINED TO MANAGEMENT THAT HUMPHREY SEXUALLY ASSAULTED HIM, BUT DEFENDANT TOOK NO REMEDIAL ACTION.

11. Mr. Howell reported Humphrey's sexual touches of Mr. Howell to other employees and to managers on every single shift he worked. He reported the behavior to a manager named Crystal (last name unknown) and a Team Leader, Tenji, referenced *supra*.

12. The day after Humphrey began sexually touching Mr. Howell, he shared his extreme discomfort with a co-worker named Shane Oakman ("Mr. Oakman"). Mr. Oakman and several other employees saw Humphrey touching Mr. Howell multiple times on his butt

and genital area. Mr. Oakman told Mr. Howell that he thought Humphrey was "trying to get under [Mr. Howell's] skin" and "enjoys seeing [Mr. Howell] mad."

13. That same day, Mr. Howell reported to the manager Crystal and Team Leader Tenji that Humphrey was repeatedly touching him below his waist despite Mr. Howell's telling Humphrey to stop. As Team Leader, Tenji had a food handler certificate, was responsible to oversee employees during their shifts and their breaks, and managed customer care. Mr. Howell had seen Crystal and Tenji watch Humphrey sexually touch him. Nevertheless, Crystal and Tenji dismissed Mr. Howell's complaints. In response, they laughed, remarked "it's not that deep," and said that Humphrey "just ha[d] a crush on [Mr. Howell]." Crystal said, "You're always complaining about Humphrey, but I always see him doing his job." Mr. Howell responded to Crystal that as a manager, it was her job to manage. Mr. Howell suggested that Crystal review the restaurant's camera footage, referencing the around-the-clock video Defendant had of the restaurant from cameras at all angles throughout its interior, to see further evidence of Humphrey sexually touching Mr. Howell.

14. Ms. Baurdette held the position of manager and Jonathan Coleman ("Mr. Coleman") held the position of general manager at Defendant's Bleeker Street restaurant.

15. After Crystal and Tenji's dismissive response to Mr. Howell's complaints, and their successive failure to act to stop Humphrey's unlawful conduct, Mr. Howell reported Humphrey's continuous sexual harassment and assault to Mr. Coleman. He requested that Mr. Coleman schedule him on different shifts than Humphrey. Mr. Howell recalls Mr. Coleman replying that the allegations were "very serious" and would be "look[ed] into."

However, Mr. Coleman continued to schedule Humphrey and Mr. Howell for the same shifts.

16. Mr. Howell learned from other employees that Humphrey also inappropriately touched other staff members.

17. On one occasion, Mr. Howell saw Humphrey approach a co-worker from behind as she was bending down to stock food in the refrigerator. Mr. Howell saw Humphrey touch her and say something to her that was inaudible to Mr. Howell. Mr. Howell afterward asked the co-worker if she wanted to report Humphrey's behavior, but the co-worker responded that she was afraid of losing her job.

### DEFENDANT RETALIATED AGAINST MR. HOWELL BY SUSPENDING HIM FOR MAKING A SEXUAL HARASSMENT CLAIM.

18. In early April, Mr. Howell was retrieving supplies from the back of the kitchen in the downstairs area of Defendant's Bleeker Street restaurant. Mr. Howell bent down to pick up buckets and sanitation liquid. Humphrey approached Mr. Howell from behind and put his hands on Mr. Howell's butt, causing Mr. Howell to feel shock, fear, and overwhelm. In reaction to Humphrey's sexual assault, Mr. Howell shouted at Humphrey, telling him a loud voice: "I'm tired of telling you over and over and over to stop."

19. Manager Ms. Baurdette was also downstairs, but in another area. Mr. Howell immediately reported to her that Humphrey had assaulted him from behind, and requested to leave work. Mr. Howell told Ms. Baurdette that he felt triggered and demoralized. Ms. Baurdette suggested to Mr. Howell that he could instead take time to "cool off" so that he could stay at work, because if he left early he would not receive a full day's pay.

20. Ms. Baurdette also advised Mr. Howell to draft a formal complaint and to email it to general manager Mr. Coleman.

21. That day, Mr. Howell sent a thorough email to Mr. Coleman detailing Humphrey's incessant sexual harassment and assault, and reporting what Humphrey had done to Mr. Howell earlier during their shift that day. Mr. Howell copied the other employees whom he believed Humphrey had also harassed on that email.

22. Mr. Coleman sent a reply email to Mr. Howell stating to him that he had forwarded the email to Defendant's Human Resources department.

23. The following day was Mr. Howell's scheduled day off. The day after that – two days after Humphrey assaulted Mr. Howell from behind – Victoria, last name unknown, called Mr. Howell and identified herself as an employee in Defendant's Human Resources department. She informed Mr. Howell that Defendant had taken Mr. Howell off the schedule.

24. Later the same day, general manager Mr. Coleman called Mr. Howell and informed him that Defendant was suspending Mr. Howell until Defendant could conduct a "thorough investigation" of what he again termed was Mr. Howell's "very serious allegation." Mr. Coleman told Mr. Howell that Defendant had no claims against him. Mr. Howell informed Mr. Coleman that he nevertheless understood Defendant to be suspending him for making a sexual harassment claim.

## DEFENDANT'S TERMINATION OF MR. HOWELL WAS RETALIATORY AND DISCRIMINATORY.

25. Two weeks after Mr. Coleman informed Mr. Howell of his suspension, another manager, whom Mr. Howell had never met, called to inform Mr. Howell that Defendant was firing him. The manager told Mr. Howell that the cause was his reaction to Humphrey on Mr. Howell's last day of work, that Mr. Howell was "too aggressive" and accused him of creating a "hostile work environment."

26. On that call, Mr. Howell requested compensation in the form of paid time off for his two-week suspension, in accordance with Defendant's company policy, but the manager refused.

27. Because Defendant did not immediately terminate Mr. Howell's access to his work email, Mr. Howell noticed that after firing him, Defendant circulated a new sexual harassment policy for all employees to sign.

**DEFENDANT'S REFUSAL TO PREVENT HUMPHREY FROM SEXUALLY HARASSING AND ASSAULTING MR. HOWELL AND DEFENDANT'S RETALIATORY TERMINATION EXACERBATED MR. HOWELL'S EMOTIONAL AND PHYSICAL ILLNESSES.**

28. Mr. Howell is the survivor of a sexual assault in his youth. Humphrey's persistent sexual assault of Mr. Howell evoked painful and traumatic memories that early trauma, considerably worsening Mr. Howell's mental state, particularly when Defendant failed to take remedial action after he reported Humphrey's behavior. He experienced trouble sleeping and eating. He states that it became difficult to get out of bed many days. Mr. Howell's depression became so overwhelming that it affected his relationship with his partner and his other personal relationships.

29. The sexual harassment and assault to which Mr. Howell was exposed while working at Defendant's restaurant exacerbated and intensified his gender dysphoria. Mr. Howell

began to frequently experience intense anxiety and states that he was constantly "on-edge" after Defendant terminated him. He became increasingly confused about how to present himself because he felt Defendant had treated him less well than other employees because of his gender identity. This caused Mr. Howell to experience an overwhelming sense of defeat in his day-to-day life that continues to the present.

30. Mr. Howell remained unemployed after Defendant terminated him on April 19, 2024 despite persistently seeking other work. During this time, he was unable to afford to have a cellular phone or pay other bills or rent.

31. Although Mr. Howell is primarily qualified to work in the service industry, he has avoided finding other work in that industry through the present time due to the trauma Defendant inflicted. As a result, Mr. Howell, who has sickle cell trait and has exacting nutrition needs as a result, frequently sold his plasma in order to afford to buy food. This situation continued until Mr. Howell found work at Gotham Greens in January 2025.

32. Defendant's treatment of Mr. Howell resulted in him experiencing extreme anxiety, depression and stress due not only to Humphrey's sexual assault of Mr. Howell, but was intensified by Defendant's failure to stop or punish it, and Defendant's firing Mr. Howell in retaliation for his sexual harassment claim against Humphrey.

33. Defendant caused Mr. Howell to experience financial and housing instability, worsening his emotional health and making him fearful for his physical health due to his sickle cell trait. This situation put further stress on Mr. Howell's relationship with his partner.

34. Mr. Howell notes the changes in his circumstances before and after he worked for Defendant as follows: when he initially went to work for Defendant, he was enthusiastic and excited, highly motivated, and grateful to work for a company that characterized

itself as Black- and queer-friendly. Now, Mr. Howell experiences psychological stress at the thought of what might happen at other workplaces that do not hold themselves out as supporting his community, as Defendant alleges itself to do. Mr. Howell experiences persistent symptoms of trauma at the thought of working at other service establishments.

35. Mr. Howell remained unemployed from April 19, 2024 to January 2025, when he found work at Gotham Greens, his current employer.

36. Defendant's actions complained of herein violate, *inter alia*, Title VII of the Civil Rights Act of 1964 because Defendant discriminated against Mr. Howell because of his gender.

37. Defendant's actions complained of herein violate, *inter alia*, Title VII of the Civil Rights Act of 1964 because they retaliated against Mr. Howell for making complaints of the multiple sexual assaults he experienced at work.

38. Defendant's actions complained of herein violate the NYCHRL, NYC Admin. Code §8-107.1, as they constitute discrimination against Mr. Howell because of his gender.

39. Defendant's actions complained of herein violate the NYCHRL, NYC Admin. Code §8-107.1, as Defendant retaliated against Mr. Howell for making complaints of the multiple sexual assaults he experienced at work.

40. Because of Mr. Howell's Complaint to the EEOC of the allegations stated herein, and because Defendant failed to reply to the Complaint despite multiple opportunities to do so, the EEOC found probable cause that Defendant engaged in unlawful employment discrimination. *See* **Exhibit 1**.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT**
*Sex-Based Discrimination in Violation of Title VII*

41. Mr. Howell repeats and re-alleges the preceding paragraphs as if fully set forth herein.

42. By the acts and practices described above, Defendant discriminated against Mr. Howell in the terms and conditions of employment on the basis of his sex, *inter alia*, by discriminating against him on the basis of his gender, including creating a hostile work environment in violation of Title VII.

43. Humphrey's sexual harassment and assault of Mr. Howell was sufficiently severe and pervasive to alter the conditions of Mr. Howell's employment and create a hostile work environment as a result of Defendant's failure to take preventative or remedial action.

44. Defendant acted with malice and reckless indifference to Mr. Howell's rights under Title VII.

45. As a result of Defendant's discrimination, Mr. Howell has suffered and will continue to suffer severe emotional distress and other compensable damages, including back pay, front pay, lost benefits, compensatory and punitive damages, and any other relief the Court finds just and proper, unless and until this Court grants relief.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
*Retaliation in Violation of Title VII*

46. Mr. Howell repeats and re-alleges the preceding paragraphs as if fully set forth herein.

47. By the acts and practices described above—including sexual harassment and sexual assault that Defendant failed to discipline or prevent, and Defendant's suspension and firing of Mr. Howell instead—Defendant retaliated against Mr. Howell for his opposition to unlawful discrimination under Title VII, in violation of that statute.

48. Mr. Howell complained to at least four managers at Defendant's restaurant about Humphrey's sexual assault of him. Rather than act to prevent Humphrey's conduct, Defendant retaliated against Mr. Howell for making these complaints.

49. Defendant acted with malice and reckless indifference to Mr. Howell's rights under Title VII.

50. As a result of Defendant's actions and inaction, Mr. Howell has suffered and will continue to suffer severe emotional distress and other compensable damages, including back pay, front pay, lost benefits, compensatory and punitive damages, and any other relief the Court finds just and proper, unless and until this Court grants relief.

### THIRD CAUSE OF ACTION AGAINST DEFENDANT
*Gender Discrimination in Violation of NYCHRL § 8-107(1)*

51. Mr. Howell repeats and re-alleges the preceding paragraphs as if fully set forth herein.

52. By the acts and practices described above, Defendant discriminated against Mr. Howell on the basis of his gender by treating Mr. Howell less well than other employees.

53. Defendant's employees misgendered Mr. Howell, mocked his gender identity, and failed to act when Mr. Howell was sexually assaulted.

54. The hostile work environment this created was severe and pervasive based on the nature of Humphrey's harassment and Defendant's indifference to it.

55. Defendant acted with malice and reckless indifference to Mr. Howell's protected rights under NYCHRL § 8-107 and/or with conscious disregard of Mr. Howell's right to work in a workplace free of gender-based discrimination.

56. As a result of Defendant's actions and inaction, Mr. Howell has suffered and will continue to suffer severe emotional distress and other compensable damages, including back pay, front pay, lost benefits, compensatory and punitive damages, and any other relief the Court finds just and proper, unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT
*Retaliation in Violation of NYCHRL § 8-107(7)*

57. Mr. Howell repeats and re-alleges the preceding paragraphs as if fully set forth herein.

58. By the acts and practices described above, Defendant retaliated against Mr. Howell for his opposition to unlawful sexual harassment and gender discrimination in violation of NYCHRL § 8-107(7).

59. Defendant acted with malice and reckless indifference to Mr. Howell's rights under § 8-107(7) and with conscious disregard for his right to work in a workplace free of retaliation on the basis of his gender.

60. As a result of Defendant's retaliation, Mr. Howell has suffered and will continue to suffer severe emotional distress and other compensable damages, including back pay, front pay, lost benefits, compensatory and punitive damages, and any other relief the Court finds just and proper, unless and until this Court grants relief.

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a) Declaring that by the acts and practices complained of herein, Defendant violated Title VII and the NYCHRL;

(b) Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these violations are eliminated and do not continue to affect Plaintiff's employment opportunities;

(c) Directing Defendant to make Plaintiff whole with regard to all earnings he would have received but for Defendant's discriminatory and retaliatory treatment, including but not limited to lost wages, pension, and other benefits;

(d) Directing Defendant to pay Plaintiff compensatory damages for his mental anguish, emotional distress, and humiliation;

(e) Awarding Plaintiff pre- and post-judgment interest;

(f) Awarding Plaintiff costs and reasonable attorneys' fees; and

(g) Granting Plaintiff such other and further relief as this Court deems necessary and proper.

Dated: Brooklyn, New York
April 1, 2025

By: _____

Erin Evers
Udoka Odoemene
BROOKLYN LEGAL SERVICES
105 Court Street, 4th Floor
Brooklyn, NY 11201
718-233-6636
eevers@lsnyc.org
uodoemene@lsnyc.org

*Attorneys for Plaintiff*